LEVI H. BLOUCH, APPELLANT, v. ELMER E. STEVENS, JR., AND MILDRED WILKINS STEVENS, RESPONDENTS.

Submitted October 26, 1929—Decided May 19, 1930.

For the appellant, *Waddington & Mathews*.

For the respondents, *Clifford A. Baldwin*.

The opinion of the court was delivered by

CASE, J. This case comes up on plaintiff's appeal from the judgment of nonsuit rendered against him below.

Defendant Elmer E. Stevens, Jr., was the owner of a tract of land, in Pensauken township, adjoining Cove road and extending thence northerly an unmentioned distance to lands of United New Jersey Railroad and Canal Company. He sold a portion of the Cove road frontage to the plaintiff and in so doing entered into a contract which the complaint alleges he has breached in two respects. The parcel sold to plaintiff was not all of defendant's lands fronting on Cove road nor did it extend northward either to defendant's boundary or so far as the southerly end of an existing railroad siding. However, it was proposed to continue the "right of way" for the siding southerly to Cove road, passing through defendant's lands and constituting the easterly, or more properly, the northeasterly boundary of plaintiff's parcel. The parcel sold plaintiff was, roughly speaking, a right-angle triangle of which the base was Cove road running east and west and the hypotenuse was the frontage of three hundred and sixty feet on the proposed extension of the right of way. Defendant undertook, in the contract, "to grade all of the proposed right of way hereinbefore mentioned extending from Cove road to the line between lands of the said Elmer E. Stevens, Jr., and the United New Jersey Railroad and Canal Company as shown on the plan herein mentioned and referred to and also to furnish on the herein-described premises all necessary earth required to grade the parcels herein described [viz., the land sold to the plaintiff] so that they may conform to the grade of the said Cove road and the proposed right of way." The stretch of right of way which defendant thus agreed to grade included that adjoining the plaintiff's above-mentioned frontage of three hundred and sixty feet. The second count of the complaint grounds in an alleged violation of the agreement to grade.

By the same instrument defendant further contracted "to extend the existing railroad siding from its point of termination in the proposed right of way to a point three hundred and twenty-five feet from the intersection of the said proposed right of way with the northwesterly line of Cove road * * *

the buyer to be granted the privilege of so extending the said siding from the said terminal point thereof or from any point in said siding and right of way adjacent to his own lands to and upon the lands herein described in any direction or location * * *." The first count of the complaint alleges violation of this obligation. It is admitted that the defendant did construct the siding for the required distance, but the breach complained of is that he, after making the contract with plaintiff, sold the lands on the opposite side of the right of way to a third party and permitted the latter to extend the siding to and upon his lands by tying to and continuing the rails in an unbroken line from their terminal points, thus compelling plaintiff to make his connection by a frog or switch, involving an expense of $842 beyond what the cost would have been if the plaintiff had been permitted, as he claims he was of right entitled, to make the connection in the manner pre-empted by his neighbor on the opposite side of the right of way.

The field of controversy on the first count is practically limited to the construction of the word "extending" as used in the pertinent provision of the contract. Plaintiff contends that the word "extend" means to "carry forward" and, specifically, to "prolong" the rails from their terminal points, citing *Trenton Street Railway Co.* v. *Pennsylvania Railroad Co.,* 63 *N. J. Eq.* 276, and that there is no authority in law or in the contract to give to the word, as the trial court did in the instant case, the significance of "connection." It is true that the opinion in the case cited did, in construing an ordinance passed by a municipality, and in determining that a grant therein made was *ultra vires,* give the word the imputed meaning. And doubtless without the modifying influence of context or manifest intention, such is the fair defintion. But the word "extend" is, both by etymology and by common usage, exceedingly flexible, lending itself to a great variety of meanings, which must in each case be gathered from the context. "The word may, in its primary sense, when applied to a line, import a continuation of the line without a

break, but it is not always used in this restricted sense." 25 C. J. 225. In construing a contract, the cardinal rule is to ascertain and give effect to the mutual intention of the parties. *Basic Iron Ore Co.* v. *Dahlke,* 103 *N. J. L.* 635, 638. The contract provides that the plaintiff shall have "the privilege of so extending the said siding from the said terminal point thereof *or* from *any point in said siding* and right of way *adjacent to his own lands."* Restating this language and omitting the alternative, the privilege is "of so extending the said siding * * * from any point in said siding and right of way adjacent," &c. Could the plaintiff have availed himself of the last named privilege, namely, of entering the siding at some lateral point rather than at its terminal, without making a "connection" and entering by a switch? Obviously not. Yet the word that he contends cannot be given that significance is the precise word here used; and unless that significance is to be imputed, the grant, to this extent, becomes meaningless. It is worth while to note that the point at which plaintiff did in fact effect his juncture with the siding was at a lateral point, not at the terminal, and that he would have been without right to do this unless the word under discussion gave the authority. Inasmuch, therefore, as the word "extending" must, in one of the two phrases dependent upon it, carry the meaning of "making a connection with," we conclude that that is the sense in which it is used. It follows that since the plaintiff was not denied the privilege of connecting his private siding into and with the main siding at the terminal point of the latter, there was no breach of the contract on this score.

With respect to the grading it is conceded that defendant did grade the right of way the full distance to Cove road. Although plaintiff states that the grading was not raised to its proper height he does not complain thereof; but he does contend that the theoretically correct grade of the right of way was a line drawn from the crown of Cove road to the level of the line between Stevens and the United New Jersey Rail-

road and Canal Company, and that plaintiff is entitled to have his land graded by defendant up to the level of a plane determined by the level of Cove road and the theoretically correct level of the right of way; and he produced testimony that one thousand nine hundred and fifty cubic yards of dirt are necessary to supplement the grading actually done by defendant in order to accomplish this result.

The contract obliged the defendant to grade all of the proposed right of way. He did so. No question is raised as to the efficiency of that grade to sustain a siding or for railroad operations thereover. Neither is it asserted that plaintiff's lands have not been graded to conform to the grades of Cove road and of the right of way as the latter actually is. There is no contractual obligation as to the height of the grade of the right of way unless it be in the phrase "as shown on the plan herein mentioned and referred to." That plan is not produced before us but we are assured that it shows boundaries only.

The northerly point which plaintiff designates as fixing the line, namely, the boundary between lands of Stevens and of the United New Jersey Railroad and Canal Company, is a considerable distance from plaintiff's lands. It would be a novel proposition to assert that without specification to that end the required grade of a new railroad or a new highway is *per se* an unvarying level between the two termini, regardless of the length of construction, differences of elevation in the terrain or the harmless effect, upon all useful purposes, of related variations in the level of the road.

We find nothing, either directly in the contract, or indirectly in the outworking of the purposes of the contract, upon which to charge the defendant with the obligation of grading the right of way to the fixed and arbitrary level suggested by the plaintiff; and as plaintiff's case under the second count of his complaint hinges on that proposition, we conclude that the nonsuit was properly allowed.

The judgment below will be affirmed.

*For affirmance*—The Chancellor, Trenchard, Parker, Black, Case, Bodine, Hetfield, Dear, JJ.   8.

*For reversal*—The Chief Justice, Campbell, Lloyd, Van Buskirk, McGlennon, Kays, Wells, JJ.   7.